### IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | |
|---|---|
| ABDALI ALI ISSA<br><br>   Plaintiff,<br><br>v.<br><br>THE CITY OF MOBILE; JACK DOVE, in his individual (personal) capacity, et. al;<br><br>   Defendants. | CIVIL ACTION NO. 1:25-cv-00106 |

## ISSA'S RESPONSE TO THE CITY OF MOBILE MOTION TO DISMISS

### APPLICABLE LEGAL STANDARDS

When reviewing a motion to dismiss, a court must accept all factual allegations contained in the complaint as true. Erickson v. Pardus, 551 U.S. 89, 94 (2007). The court must also construe those factual allegations in the light most favorable to the plaintiff. Hunt v. Aimco Props., L.P., 814 F.3d 1213, 1221 (11th Cir. 2016). Conclusory allegations and legal conclusions are not entitled to a presumption of truth, however. *See* Ashcroft v. Iqbal, 556 U.S. 662, 664, 678 (2009). In deciding a Rule 12(b)(6) motion to dismiss, the Court limits its consideration to well-pleaded factual allegations, documents central to, or referenced in, the complaint, and matters judicially noticed. La Grasta v. First Union Sec., Inc., 358 F.3d 840, 845 (11th Cir. 2004). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Bell Atlantic Corp. v. Twombly, 550 U.S. 544,563 (2007), "When there are well-pleaded factual allegations, a court should assume their veracity and then determine *whether they plausibly give rise to an entitlement to relief.*" *Id.*

(emphasis added). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Twombly, 550 U.S. at 556, 127 S.Ct. at 1965). The Supreme Court emphasized, however, that "we do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." 550 U.S. at 570. Sinaltrainal v. Coca–Cola Co., 2009 WL 2431463 (11th Cir. Aug. 11, 2009)

## I.  ISSA HAS ESTABLISHED PLAUSIBLE DUE PROCESS CLAIMS AS AGAINST CITY OF MOBILE AS TO 42 USC §1983 (Fourth and Fourteenth Amendment Counts One and Two)[1]

Issa filed his complaint in the State of Alabama's Thirteenth Judicial Circuit in Mobile County on February 7, 2025 (Doc#1-2). The City sought removal on March 13, 2025 (Doc#1) Issa details his grievance in a thirty page complaint that the City of Mobile Property Maintenance code authorized warrantless entry, inspection and seizure of Issa's property and how the lawless search and seizure was the moving force behind the City's criminal prosecution. The City avers Issa's thirty (30) page complaint "lacks factual specificity and fails to identify any direct constitutional violations by the City or a specific 'policy, practice, or custom of the City which caused the constitutional violation.'" (Doc.4, 208) The City moves to dismiss Counts One and Two arising under 42 USC §1983. The City alleges Issa predicates these counts for an "injury inflicted solely by its employees or agents." (Doc.4, #212) The City argues Issa is alleging a veiled respondeat superior case in this context, which under Monell v. Dep't of Social Servs., 436 U.S. 658 (1978) is disallowed. These arguments fall short. First, Issa has alleged a

---

[1] The City does not seem to challenge Issa's state constitutional violations alleged in Counts One and Two.

specific policy, custom, or practice by the City resulting in a constitutional violation. In his complaint, Issa notes that the *City of Mobile* has passed a code enforcement ordinance authorizing warrantless property invasions and seizures in violation of the Fourth Amendment.[2](¶74)

Further, the City seeks to dismiss Issa's state law counts on grounds that the City cannot be held vicariously liable for intentional acts of its employee. While the City's motion to dismiss is well taken as to Counts eight (malicious prosecution) and ten (outrage), the remaining counts state plausible claims for conduct committed negligently, carelessly, unskillfully, in misinterpretation of the law, or in bad faith.

### A. Issa has Properly Pled Municipal Liability as to Counts One and Two For Claims Arising Under 42 U.S.C. § 1983

A Section 1983 procedural due process claim requires a plaintiff to prove three elements: "(1) a deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally-inadequate process." Grayden v. Rhodes, 345 F.3d 1225, 1232 (11th Cir.2003) *as cited in* Catron v. City of St. Petersburg, 658 F.3d 1260, 1266 (11th Cir. 2011) Here Issa has plausibly alleged a warrantless invasion, search, and seizure of his residence, curtilage, and automobiles by city officials without recourse to law and in violation of the Fourth Amendment. Issa has alleged the ordinance requires no pre-compliance review when a code enforcement officer is refused entry.

"It is undisputed that the Fourth Amendment applies to the actions of municipal officials who enter onto private property to search for or abate nuisances and it is beyond debate. *See* Michigan v. Tyler, 436 U.S. 499, 504–07, 98 S.Ct. 1942, 56 L.Ed.2d 486 (1978); Camara v. Municipal Court, 387 U.S. 523, 530, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967). "It is also quite clear

---

[2] Issa also alleges state constitutional violations as well.

that this Amendment provides independent protection against not only searches but unreasonable seizures as well." Soldal v. Cook County, 506 U.S. 56, 113 S.Ct. 538, 121 L.Ed.2d 450 (1992) *as cited* in Gould v. Symons, No. 01-CV-10026-BC, 2002 WL 2031563, at *5 (E.D. Mich. Sept. 4, 2002).

### 1. Issa alleges Specific Municipal Policy Resulting in Constitutional Violations

Issa alleges the *City of Mobile* has passed an ordinance authorizing warrantless property invasions and seizures in violation of the Fourth Amendment. In this regard, Issa challenges the municipal policy itself as stated in a specific municipal code.[3] (¶74) Issa has alleged the City of Mobile has a code enforcement policy or procedure authorizing warrantless entry and inspection of residential property holders without resorting to remedies provided by law to secure entry. (¶83-98,147) (Sec. 52-1 (§104.3: Right of Entry under The City of Mobile's Municipal Code). Issa served notice with the Attorney General Office of the State of Alabama, that the enforcement of this ordinance by the City of Mobile Code Enforcement officers in this fashion is also a violation Issa's state constitutional rights and sought declaratory judgment relief per Ala. Code §6-6-220 and Rule 57 of the ARCP. (¶11; Relief Requested paragraph in Complaint)

A municipal code provision is a specific policy, practice, or custom of the City of Mobile that caused constitutional harm to Issa in this instance. 42 U.S.C.A. § 1983 recognizes a cause of action for injury "under color of color of any statute, ordinance, regulation, custom, or usage…" Thus, Issa has alleged the City of Mobile had a policy, ordinance, or regulation that could fairly

---

[3] Issa has requested declaratory relief pursuant to Ala. Code §6-6-220 and Rule 57 ARCP (¶11; Relief Requested). Issa seeks a declaration that the City of Mobile Property Maintenance Code require a search warrant before a code inspector may enter and inspect private property upon refusal by a property owner.

be said to represent official policy authorizing Dove and other city officials to engage in unconstitutional conduct.

> **104.3 Right of Entry**
>
> Where it is necessary to make an inspection to enforce the provisions of this code, or whenever the *code official* has reasonable cause to believe that there exists in a *structure* or upon a *premises* a condition in violation of this code, the *code official* is authorized to enter the structure or *premises* at reasonable times to inspect or perform the duties imposed by this code, provided that if such *structure* or *premises* is occupied the *code official* shall present credentials to the *occupant* and request entry. If such structure or *premises* is unoccupied, the *code official* shall first make a reasonable effort to locate the *owner*, owner's authorized agent or other person having charge or control of the *structure* or *premises* and request entry. ==If entry is refused, the *code official* shall have recourse to the remedies provided by law to secure entry.==

Issa plausibly pleads Sec. 52-1 (§104.3) of the City of Mobile Property maintenance code as adopted by municipal ordinance 65-048-2017 is facially unconstitutional, and as applied to him, in violation of the Fourth Amendment and Fourteenth Amendments. The ordinance does not on its face require the official code to seek the recourse to the remedies provide by law to secure entry, and places newly annexed citizens in the constitutional quandary repudiated in City of Los Angeles, Calif. v. Patel, 576 U.S. 409, 421, 135 S. Ct. 2443, 2452–53, 192 L. Ed. 2d 435 (2015). (¶74,86).

In NILI 2011, LLC v. City of Warren, No. 15-CV-13392, 2017 WL 5467746, at *7 (E.D. Mich. Nov. 14, 2017) the Plaintiff made a facial challenge to the City of Warren Michigan's code provision §104.3 containing the identical language of Mobile's §104.3 code provision Issa challenges.

City of Warren Code

> Where it is necessary to make an inspection to enforce the provisions of this code, or whenever the code official has reasonable cause to believe that there exists in a structure or upon a premises a condition in violation of this code, the code official is authorized to enter the structure or premises at reasonable times to inspect or

> perform the duties imposed by this code, provided that if such structure or premises is occupied the code official shall present credentials to the occupant and request entry.... **If entry is refused, the code official shall have recourse to the remedies provided by law to secure entry**. (emphasis)

"The Court finds that reasonable jurors may disagree about whether Section 104.3 of the IPMC is facially unconstitutional given the City's immediate imposition of a fine following a refusal to grant access to a premises." NILI 2011, LLC v. City of Warren, No. 15-CV-13392, 2017 WL 5467746, at *7 (E.D. Mich. Nov. 14, 2017).

In the instant case, Issa has alleged a City of Mobile sanction far harsher than a mere fine. The City makes it a crime to refuse an inspection. (¶58-59) Dove notes on the actual description of the offenses of the criminal charging instruments that Issa "**Refused to allow inspections**" and "**Prevent Entry**." (¶58-59) In Camara v. Mun. Ct. of City & Cnty. of San Francisco, 387 U.S. 523, 540, 87 S. Ct. 1727, 1737, 18 L. Ed. 2d 930 (1967) the Court held this unconstitutional: "[A]ppellant had a constitutional right to insist that the inspectors obtain a warrant to search and that appellant may not constitutionally be convicted for refusing to consent to the inspection." If a citizen does not comply with the unlawful search and seizure sanctioned by the code, that citizen is charged criminally or at least is threatened with criminal prosecution for failure to comply. Issa alleges he was charged by the City with obstructing government operations, failure to obey, and resisting arrest with incarceration, and fines for his refusal to allow a warrantless entry. The City has authorized a policy that gives the homeowner no choice but to comply. The homeowner may not refuse to comply because the citizen must "<u>**always**</u> **do what the nice policeman tells you to do**" and because the code enforcement officer reminds one "**I'm the Police and what I say goes**! (¶49,56) After all, "**he who wears the gold shield calls the ball**." (¶49) In short, Issa plausibly alleges that he and thousands of other newly annexed citizens who refuse to consent to code inspector searches are forced to

choose between consenting to a warrantless search and seizure or subjecting themselves to incarceration, fines, and penalties for refusing entry. (¶22) Such a scheme is unconstitutional on its face. "A hotel owner who refuses to give an officer access to his or her registry can be arrested on the spot. The Court has held that business owners cannot reasonably be put to this kind of choice." City of Los Angeles, Calif. v. Patel, 576 U.S. 409, 421, 135 S. Ct. 2443, 2452–53, 192 L. Ed. 2d 435 (2015) citing Camara, 387 U.S., at 533, 87 S.Ct. 1727 (holding that "broad statutory safeguards are no substitute for individualized review, particularly when those safeguards may only be invoked at the risk of a criminal penalty"). *See also* Landon v. City of Flint, No. CV 16-11061, 2017 WL 2798414, at *4 (E.D. Mich. June 27, 2017) "However, neither argument negates that Flint's previous inspection code did not, on its face, afford property owners an opportunity for pre-compliance review or suggest that they had the right to resist warrantless entries for inspections."

There is no precompliance review under Mobile's ordinance for a citizen who refuses to consent to a search. Instead, the citizen is left to the unfettered discretion of code enforcement officers- a dangerous prospect indeed as alleged by Issa in his complaint. As the United States Supreme Court reminds us "Absent an opportunity for precompliance review, the ordinance creates an intolerable risk that searches authorized by it will exceed statutory limits or be used as a pretext to harass hotel operators and their guests. Even if a hotel has been searched 10 times a day, every day, for three months, without any violation being found, the operator can only refuse to comply with an officer's demand to turn over the registry at his or her own peril." Patel, 135 S. Ct. at 2452–53, (2015).

In Garner Properties & Mgmt. v. Charter Twp. of Redford, No. 15-14100, 2017 WL 3412080, at *11 (E.D. Mich. Aug. 8, 2017) the court was asked to pass upon a Fourth

Amendment facial challenge to the Charter Township of Redford's IPMC § 104.4. This code provision included near identical language to Mobile's code.

> **Right of entry**. The code official is authorized to enter the structure or premises at reasonable times to inspect subject to constitutional restrictions on unreasonable searches and seizures. **If entry is refused or not obtained, the code official is authorized to pursue recourse as provided by law**. (emphasis)

The Court held that "Garner Properties survives summary judgment on its Fourth Amendment claim." Garner Properties & Mgmt. at *10 (E.D. Mich. Aug. 8, 2017). [4]

Issa has alleged as part of his procedural due process claim plausible facts that the City's ordinance fails to provide precompliance review (i.e. a warrant) by neutral and detached magistrate or judicial officer when the code inspector is refused entry. Garner Properties & Mgmt. at *11 (E.D. Mich. Aug. 8, 2017); *see also* Landon v. City of Flint, No. CV 16-11061, 2016 WL 7661390 (E.D. Mich. Nov. 30, 2016), report and recommendation adopted, No. CV 16-11061, 2017 WL 345854 (E.D. Mich. Jan. 24, 2017). "To be clear, we hold only that a hotel owner must be afforded an *opportunity* to have a neutral decisionmaker review an officer's demand to search the registry before he or she faces penalties for failing to comply." City of Los Angeles, Calif. v. Patel, 576 U.S. 409, 421, 135 S. Ct. 2443, 2453, 192 L. Ed. 2d 435 (2015)

Here the City of Mobile's Code Provision lacks constitutionally adequate procedural protections as the ordinance is presently written and enforced. Catron v. City of St. Petersburg, 658 F.3d 1260, 1269 (11th Cir. 2011) The ordinance on its face fails to instruct or require the code enforcement officers that "remedies to recourse provided by law" means get a warrant. For

---

[4] Even the Charter Township of Redford's code contained constitutional restrictions that the City of Mobile's does not. Under the Charter Township's ordinance, if the occupant refuses an inspection in the Charter Township of Redford, the inspection does not occur. Garner Properties & Mgmt. v. Charter Twp. of Redford, No. 15-14100, 2017 WL 3412080, at *10 (E.D. Mich. Aug. 8, 2017)

as the chief code inspector for the City Jack Dove notes under the law- it is the law that authorized the City to inspect anything anytime (¶49-50) "[D]ue process requires at least sufficient exactness to prevent arbitrary enforcement and give notice of what an individual must do to comply with the enactment." Belle Maer Harbor v. Charter Twp. of Harrison, 170 F.3d 553, 559 (6th Cir. 1999) The Supreme Court in Camara underscored the constitutional infirmity of such a scheme.

> Under the present system, when the inspector demands entry, the occupant has no way of knowing whether enforcement of the municipal code involved requires inspection of his premises, no way of knowing the lawful limits of the inspector's power to search, and no way of knowing whether the inspector himself is acting under proper authorization. Camara, 387 U.S. 523, 528–29 (1967)

As written and enforced, Mobile's ordinance sanctions warrantless searches and seizures which are per-se unreasonable under the Fourth Amendment. Payton v. New York, 445 U.S. 573, 585–86, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980); Katz v. United States, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967).

### 2. Alternatively, Issa has alleged Specific Municipal Custom Resulting in Constitutional Violation

Alternatively, Issa has alleged a municipal custom that was causally responsible for his harm-namely that of municipal authorities enforcing and interpreting the property maintenance code to allow warrantless invasions of homeowners to search for anything at anytime. (¶95,96) A custom is a practice that is so settled and permanent that it takes on the force of law. Monell, 436 U.S. at 690–91, 98 S.Ct. at 2035–36 as cited in Sewell v. Town of Lake Hamilton, 117 F.3d 488, 489 (11th Cir. 1997) Issa has plausibly alleged that the recourse to law mandate of the ordinance is in reality and custom a recourse to the unfettered discretion of the City's chief code enforcement officer.

In the light most favorable to this allegation, Issa has alleged in his complaint specific statements from the City's then Commander and Police Inspector of the Municipal Code Task Force of the Mobile Police Department Special Investigations Section, Jack Dove evidencing plausible inferences this as a municipal policy, practice, or custom. (¶3,49-50,86): –"**I have the right to inspect anything, anytime**" and "**I'm the Police & What I say Goes!**" and "**Mr. ISSA always do what the nice policeman tells you to do**" and "**We could've busted in the door**" and "**He who wears the gold shield calls the ball**." Finally, Dove specifically advises Issa, "**We are assigned directly from the Mayor's Office**." (¶49) These statements and conduct give rise to a plausible inference that the City also has a custom of executing warrantless residential searches and seizures in newly annexed property owners like Issa. This creates a plausible inference that the code enforcement scheme was executed upon imprimatur of the city's highest policymaker. Dove's statements plausibly reflect a custom of the City as implemented by its chief code enforcement official that the code itself officially sanctions constitutional insult- that the City can do whatever it likes, whenever it likes without any recourse to law or pre-compliance review by a neutral and detached decisionmaker.




Dove's statements and conduct as alleged in the complaint plausibly allege an inference of municipal code enforcement custom that code inspectors and police officers are the law, what they say goes, and that the citizens refusing entry faces the boot on his door, the gun at his pet, the seizure of his property, and arrest. Issa has plausibly alleged that the ordinance represents the official policy and custom of the City of Mobile, not Dove, and implicates a sufficient nexus between official municipal policy and constitutional harm with sufficiently pled causal links.

### 3. Vehicle Search and Seizure

As for the warrantless entry, search, and seizure of Issa's business and personal vehicles on his residential property, "searching a vehicle parked in the curtilage involves not only the invasion of the Fourth Amendment interest in the vehicle but also an invasion of the sanctity of the curtilage." Collins v. Virginia, 584 U.S. 586, 596, 138 S. Ct. 1663, 1672, 201 L. Ed. 2d 9 (2018). At least one Alabama appellate court has applied Collins in the context of code enforcement inspections within the curtilage. The government must comply with the Fourth Amendment. McDonald v. Keahey, 301 So. 3d 823, 838 (Ala. Civ. App. 2019) "McDonald's vehicles were seized from her home without a warrant or constitutionally adequate administrative process. Thus, we conclude that McDonald presented substantial evidence that the seizure of her two vehicles violated her Fourth Amendment right to be free from unreasonable searches and seizures." See Conner v. City of Santa Ana, 897 F.2d 1487, 1492 (9th Cir. 1990) "We conclude that the fourth amendment protected the Conners from the City's warrantless entry onto their property and from the warrantless seizure of their automobiles. The warrant requirement applied to the City when, without the Conners' consent, it broke down their fence, entered their property and seized the automobiles, regardless of how 'reasonable' the warrantless search and seizure appeared in light of the pre-seizure process afforded the Conners." See Gould

v. Symons, No. 01-CV-10026-BC, 2002 WL 2031563, at *8 (E.D. Mich. Sept. 4, 2002) "The plaintiff's truck was seized from his homestead. There was no warrant, no consent, and exigent circumstances did not exist. The undisputed facts demonstrate, therefore, that the plaintiff's rights under the Fourth Amendment were violated."

In the final analysis, because the Fourth Amendment prohibits a warrantless search, it is not a remedy provided by law. Vonderhaar v. Vill. of Evendale, Ohio, 906 F.3d 397, 401 (6th Cir. 2018)

### 4. Single Instance Defense Lacks Merit

Since Issa alleges a municipal ordinance facially unconstitutional or alternatively as applied to him, the single instance defense is not applicable. "[I]t is plain that municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances. No one has ever doubted, for instance, that a municipality may be liable under § 1983 for a single decision by its properly constituted legislative body—whether or not that body had taken similar action in the past or intended to do so in the future—because even a single decision by such a body unquestionably constitutes an act of official government policy. Pembaur v. City of Cincinnati, 475 U.S. 469, 480, 106 S. Ct. 1292, 1298, 89 L. Ed. 2d 452 (1986)

### 5. Issa has plausibly pled City Ordinances Are the Cause of his Deprivation

"Where a plaintiff claims that a particular municipal action *itself* violates federal law, or directs an employee to do so, resolving these issues of fault and causation is straightforward. Section 1983 itself 'contains no state-of-mind requirement independent of that necessary to state a violation' of the underlying federal right." Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown, 520 U.S. 397, 404–05, 117 S. Ct. 1382, 1388, 137 L. Ed. 2d 626 (1997)

Issa has plausibly pled that the ordinance on its face or as applied in its execution by the city dispenses with a warrant or other legal recourse to law and this was the moving force behind the constitutional violation and injury.

Simply put, if the City had a practice, policy, custom, or procedure that required recourse to the remedies provided by law to secure entry this incident would not have occurred. What set off the powder keg, was Issa requesting the City to provide a warrant before unlawfully entering, searching, and seizing his property. If the City would have simply complied with the Constitution of the State of Alabama and the United States Constitution, such a practice, policy, custom, or procedure would have reduced the likelihood of unlawfulness on the part of Dove. Again, all Issa asked for was a warrant or legal process. (¶30,32)

Additionally, if the City had simply provided Issa with the thirty-day grace period for declaring a vehicle a nuisance as guaranteed by City of Mobile Municipal Ordinance Section 52.184, the likelihood of the unlawful invasion by the City would have been avoided. It would have been evident that the cars deemed nuisances were in fact operable and not junk cars under the City of Mobile Property Maintenance Ordinance. After all, Issa had complied with state and county authorities in securing the proper business licensing, and there was no reason to believe Issa would not comply with the law once notified of his thirty-day grace period. (¶19,21)

The City takes issue with Issa's alternative claims for relief as to how the ordinances in question deprive him of fundamental constitutional rights. However, Issa may claim alternative constitutional challenges even those that may be inconsistent provided they are plausible.[5]

### B. Fourth Amendment and Procedural Due Process Claims State Plausible Deprivation of Both Liberty and Property Rights

---

[5] Such a practice is entirely consistent with Fed. R. Civ. P. 8 (d) allowing for alternative statements of a claim or defense or separate claims as it has, regardless of consistency. The pleading is sufficient if any one of them is sufficient.

As discussed, Issa plausibly alleges the ordinance fails to provide precompliance review by a neutral and detached decision maker upon a citizen's refusing entry to a code enforcement official.

However, the City of Mobile's Real Property Maintenance Code does provide certain procedural guarantees before the City may declare motor vehicles inoperable and public nuisances. Issa has plausibly alleged that the City violated its own ordinance that the inoperable vehicle must be "<u>in the view of the general public for thirty-days or more</u> and is <u>inoperable</u>." Section 52.184 (¶71). Issa has plausibly alleged that the City failed to abide by these procedural guarantees in that City cited Issa the same day as it inspected his property. Issa has alleged plausible inferences that the City did not follow this rule, for if they did the City would have clearly noticed that many of the vehicles were in fact operable, including Issa's own personal vehicle and those of his sons. Additionally, Issa has alleged many of the vehicles were located behind his gated residential fence not open to the general public clearly marked with a No Trespassing sign.(¶29,35,36,45,51,82) The thirty-day grace period Issa refers to here is not to be confused with the thirty-day compliance mandate referenced in the Notice of Violation per Sec. 52-187 (b)(2).[6]

The City seeks to pigeonhole Issa's due process claims against the City as sounding only in a claim for deprivation of *property* rights. The City asserts that Issa's averments do not plausibly claim deprivation of property rights. However, Issa has sufficiently pled plausible claims for deprivation of liberty interests as well. (¶42,52,53,56-57,59,61-68) Nevertheless, Issa

---

[6] Sec. 52-187 (b)(2) provides in part that "the notice of violation shall state that the owner of the vehicle is given thirty (30) days from the date the notice is received to either cause the vehicle to be removed from said property or to cause the vehicle to be stored in an enclosed building completely shielded from the view of individuals on the adjoining properties.

has plausibly pled property right deprivation as the City tagged Issa's personal vehicle, family member vehicles, and customer vehicles as junk vehicles that were in fact operable. (¶36-38,45). The City also issued citations to him and prosecuted him for the offenses. The City fails to acknowledge that deeming these vehicles as public nuisances constitute a seizure within the meaning of the Fourth Amendment. Deemed a public nuisance, Issa could not legally operate his motor vehicle on the roadway for any reason until the fictional nuisance was somehow remedied. Curiously the City seems to suggest that the vehicles it deems junk cars and nuisances are safe and appropriate for roadway travel. The City's code enforcement scheme is to place the nuisance stickers on the vehicles-so the world can see the vehicle is nuisance and unworthy of travel. A decision to operate an inoperable vehicle tagged by the City, might give a reasonable person pause to drive such a vehicle on the roadway after the City's chief code enforcement officer has handcuffed you, threatened to shoot your dog, boasted of his power to jail you for six months and kick in your door, and inspect anything, anytime. "A seizure of property occurs when there is some meaningful interference with an individual's possessory interests in that property." United States v. Jacobsen, 466 U.S. 109, 113 (1984) (internal quotation omitted). "Jacobsen cannot fairly be limited to cases involving destruction of property." Asinor v. D.C., 111 F.4th 1249, 1256 (D.C. Cir. 2024)

  Here the City's conduct in restricting Issa's use of and his possessory property interest is enough. The City would have the Court read asportation, destruction, or damage elements into the seizure calculus. This is unwarranted. *See* United States v. Place, 462 U.S. 696, 710, 103 S. Ct. 2637, 2646, 77 L. Ed. 2d 110 (1983) taking custody of Place's suitcase for 90 minutes was deemed an unlawful seizure for it unreasonably infringed "the suspect's possessory interest in his luggage."

The Notice of Violation not only restricted his use of the vehicles in question but also required affirmative conduct to remedy a condition. (¶36)

Ordinarily, a seizure of personal property has been viewed by the Supreme Court as "per se unreasonable within the meaning of the Fourth Amendment unless it is accomplished pursuant to a judicial warrant issued upon probable cause and particularly describing the items to be seized." United States v. Place, 462 U.S. 696, 701, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983) *as cited in* McDonald v. Keahey, 301 So. 3d 823, 833 (Ala. Civ. App. 2019)

The City cites Catron but it misses the mark here as well. While the City alleges Issa's complaint fails to allege the City ever took possession of or demolished the cars, Issa need not allege such conduct. All Issa need allege is that that the City restriced the use of his property and his business property in a meaningful way. The City's recitation of Grayden as well fails to move the needle on this issue. Grayden was decided at the summary judgment stage. It suffices to say however that Issa has plausibly alleged a costitutionally-protected property and liberty interest in the right be free from unlawful searches and seizures and that the deprivation was caused by the a municipal ordinance.

**C. Issa's State Law Claims allege conduct committed negligently, fraudulently, in misinterpretation of the law, or in bad faith, and/or negligently, carelessly, or unskillfully and Are Cognizable Against the City**

The City challenges counts Seven through Ten, alleging each is predicated on intentional torts under state law and therefore the City cannot be vicariously liable. The City does not otherwise challenge the sufficiency of the conduct alleged in these counts as plausibly pled. Issa has alleged negligence, carelessness, and unskillfulness of Dove in the commission of the state law claims (¶7-8,129-137). In all counts six through ten, Issa incorporates by reference the

allegations contained in ¶129-137. The City acknowledges "it is liable for negligent acts of its employees within the scope of their employment…" (Doc.4; #218)

"[A] municipality can in fact incur liability for the negligent acts of its employees. *See* Ala. Code § 11–47–190 (1975). "In other words, the common law rule of vicarious liability applies to Alabama's municipalities." Exford v. City of Montgomery, 887 F. Supp. 2d 1210, 1231 (M.D. Ala. 2012). Issa has alleged Dove and municipal agents acted negligently, unskillfully and carelessly in interpreted existing law, as evidenced in particular by Dove's statements to Issa. (¶49,86) The City cites Brown v. City of Huntsville, Ala., 608 F.3d 724, 743 (11th Cir. 2010) in urging dismissal of counts six through ten, but Brown merely affirms that municipalities may be vicariously liable for the torts of their agents, if the agent acted with "neglect, carelessness, or unskillfulness." Ala. Code § 11–47–190

Even if the complaint alternatively alleges intentional conduct on behalf of a municipal agent, that issue is not dispositive of municipal liability. Even an assault claim against a municipality can be based on unskillfulness. City of Birmingham v. Thompson, 404 So. 2d 589, 592 (Ala. 1981)

1. **Count Six Trespass as to the City**: (¶157-160)

Alabama courts recognize a trespass claim may be brought against a municipality. For example, the Alabama Court of Civil Appeals has reasoned that " '[t]he viability of a negligence action against a municipality under Ala. Code §11–47–190 determines the success or failure of a nuisance action based upon the same facts....' The same is true for an action in trespass." Furin v. City of Huntsville, 3 So. 3d 256, 267 (Ala. Civ. App. 2008)(citation omitted); 611 Boulevard LLC v. City of Valley, AL, No. 3:21-CV-478-ECM, 2021 WL 4690828, at *3 (M.D. Ala. Oct. 7, 2021); Johnson v. City of Prichard, 771 F. Supp. 2d 1310, 1316 (S.D. Ala. 2011). S*ee also*

Johnson v. City of Prichard, 771 F. Supp. 2d 1310, 1315–16 (S.D. Ala. 2011)(reasoning that if the defendant employees "were mistaken in their belief that they had proper authority, then their trespass could have resulted from their neglect or carelessness.") The City as is evident from Dove's statements believes it was rightfully on Issa's property and, therefore, this court may reasonably infer that its presence on the property could be a result of neglect or carelessness. *See also* Roberts v. City of Geneva, 114 F.Supp.2d 1199 (M.D.Ala.2000)

**2. Count Seven False Arrest/False Imprisonment as to the City**: (¶163-167)

In Borders v. City of Huntsville, 875 So. 2d 1168, 1183–84 (Ala. 2003), the Alabama Supreme court held that a plaintiff in the context of claims for assault and battery, and false imprisonment and false arrest, can allege factual patterns that demonstrate 'neglect, carelessness or unskillfulness' of a municipal agent, and therefore the municipality is not immune from liability pursuant to § 11–47–190; *see also* Franklin v. City of Huntsville, 670 So.2d 848 (Ala.1995). False imprisonment claim against a municipality was not barred by immunity. City of Bayou La Batre v. Robinson, 785 So.2d 1128 (Ala.2000). A municipality is not immune from actions alleging false arrest and imprisonment based on negligence on part of city employees acting within scope of their employment. Franklin v. City of Huntsville, 670 So. 2d 848, 852 (Ala. 1995), as modified on denial of reh'g, (Nov. 22, 1995).

**3. Count Eight Malicious Prosecution as to City**: (¶168-174)

A municipality cannot be held liable for malicious prosecution, and therefore to the extent the complaint alleges the City liable for malicious prosecution, the City's motion in this regard is well-taken. McCarter v. City of Florence, 216 Ala. 72, 112 So. 335 (1927) (abrogated on other grounds by, Jackson v. City of Florence, 294 Ala. 592, 320 So. 2d 68 (1975));

Neighbors v. City of Birmingham, 384 So. 2d 113 (Ala. 1980); Franklin v. City of Huntsville, 670 So. 2d 848, 852 (Ala. 1995), as modified on denial of reh'g, (Nov. 22, 1995).

4. **Count Nine Abuse of Process as to City**: (¶175-179)

The City misses the mark here as well. Issa specifically pled sufficient facts to plausibly allege the City and Dove acted negligently, fraudulently, in misinterpretation of the law, or in bad faith, and/or negligently, carelessly, or unskillfully in harming Issa. (¶7-8). An abuse of process claim is a plausible cause of action against a municipality. Pottinger v. City of Miami, 810 F. Supp. 1551, 1566 (S.D. Fla. 1992) recognizing a municipality may be liable for abuse of process where City used the arrest process for the ulterior purpose of driving the homeless from public areas.

5. **Count Ten Outrage as to City (¶180-185)**

A municipality cannot be held liable for the tort of outrage, and therefore to the extent the complaint alleges the City liable for malicious prosecution, the City's motion in this regard is well-taken. Walker v. City of Huntsville, 62 So. 3d 474, 501 (Ala. 2010); Hunter v. City of Leeds, No. 1:15-CV-2266-KOB, 2021 WL 3550922, at *8 (N.D. Ala. Aug. 11, 2021)

**B. Issa Does Not Plead Punitive Damages against the City of Mobile**

Issa does not seek punitive damages against the City of Mobile. (¶14)

**II.   ISSA STATES PLAUSIBLE CLAIMS**

As to Counts One and Two, Issa has plausibly alleged the City's Property Maintenance Code authorizes warrantless invasions of constitutionally protected areas without precompliance review by a neutral and detached decisionmaker. The specific ordinance constitutes official municipal policy and custom. The ordinance is unconstitutional on its face or as applied to Issa. This ordinance, policy, and custom was the moving force behind the legal cause of Issa's injury

and damages. Issa has plausibly claimed a factual pattern that demonstrates neglect, carelessness, or unskillfulness" on the part of Dove and therefore attributable to the City as to counts Six (Trespass), Seven (False Arrest/Imprisonment), and Nine (Abuse of Process). As to Counts Eight (Malicious Prosecution) and Ten (Outrage) against the City, Issa concurs in dismissal of these counts. In the final analysis, Issa's averments are not so implausible that the complaint cannot be maintained at this stage of the proceedings. Based on the foregoing "there is more than a sheer possibility" the City has deprived Issa of a constitutionally protected liberty and property interest.  Iqbal, 129 S.Ct. at 1949.

                Respectfully submitted,

                /s/ Matt Green
                Matt Green, Esq. (GREEM9500)

OF COUNSEL:
Matt Green, Esq.
The Law Office of Matt Green, LLC
*The Pollock-Altmayer House*
501 Government Street, Suite 1
Mobile, AL 36602
P: (251) 434-8500
F: (251)408-3265
E: matt@mattgreen.lawyer

CERTIFICATE OF SERVICE

    I hereby certify that on the 4th day of April, 2025, a copy of the foregoing Response to Defendant's Motion to Dismiss was served upon the parties or counsel for all parties by placing same in the United States mail, properly addressed and postage prepaid, and/or via the Court's electronic filing system as follows:

    Taylor Johnson, Esq.
    Kristy Waldron, Esq.
    BURR & FORMAN LLP
    11 N. Water Street, Suite 22200
    Mobile, AL 36602

                /s/ Matt Green
                Matt Green, Esq.