IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| ABDALI ALI ISSA,  Plaintiff,  v.  THE CITY OF MOBILE; JACK DOVE, in his individual (personal) capacity, et. al;  Defendants. | CIVIL ACTION NO. 1:25-cv-00106 |

**ISSA'S RESPONSE TO JACK DOVE'S MOTION TO DISMISS**

**APPLICABLE LEGAL STANDARDS**

When reviewing a motion to dismiss, a court must accept all factual allegations contained in the complaint as true. Erickson v. Pardus, 551 U.S. 89, 94 (2007). The court must also construe those factual allegations in the light most favorable to the plaintiff. Hunt v. Aimco Props., L.P., 814 F.3d 1213, 1221 (11th Cir. 2016). Conclusory allegations and legal conclusions are not entitled to a presumption of truth, however. *See* Ashcroft v. Iqbal, 556 U.S. 662, 664, 678 (2009). In deciding a Rule 12(b)(6) motion to dismiss, the Court limits its consideration to well-pleaded factual allegations, documents central to, or referenced in, the complaint, and matters judicially noticed. La Grasta v. First Union Sec., Inc., 358 F.3d 840, 845 (11th Cir. 2004). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Bell Atlantic Corp. v. Twombly, 550 U.S. 544,563 (2007), "When there are well-pleaded factual allegations, a court should assume their veracity and then determine *whether they plausibly give rise to an entitlement to relief.*" *Id.*

(emphasis added). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Twombly, 550 U.S. at 556, 127 S.Ct. at 1965). The Supreme Court emphasized, however, that "we do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." 550 U.S. at 570. Sinaltrainal v. Coca–Cola Co., 2009 WL 2431463 (11th Cir. Aug. 11, 2009).

## I. Issa Alleges Plausible Due Process Claims Against Jack Dove As To 42 USC §1983 (Fourth and Fourteenth Amendment Counts One and Two)[1]

Issa filed his complaint in the State of Alabama's Thirteenth Judicial Circuit in Mobile County on February 7, 2025 (Doc.1-2). The City sought removal on March 13, 2025 (Doc.1) Dove had as now filed a motion to dismiss in part. (Doc.6) Issa responds and alleges he has plausibly pled in his complaint procedural due process violations under Count One, cognizable "seizures" of property in Count Two, and a plausible claim for Abuse of Process in Count Nine.

### A. Issa States a Claim for Procedural Due Process per 42 U.S.C. § 1983 (Count One)

A Section 1983 procedural due process claim requires a plaintiff to prove three elements: "(1) **a deprivation of a constitutionally-protected liberty or property interest**; (2) state action; and (3) **constitutionally-inadequate process**." Grayden v. Rhodes, 345 F.3d 1225, 1232 (11th Cir.2003) *as cited in* Catron v. City of St. Petersburg, 658 F.3d 1260, 1266 (11th Cir. 2011). Dove avers Issa has not plausibly pled the first and third elements.

#### 1. Issa Plausibly Alleges Deprivation of Property Rights

---

[1] Dove does not seem to challenge Issa's state constitutional violations alleged in Counts One or Count Two.

The Supreme Court of the United States has ruled that the Fourth and Fourteenth Amendments protect against "meaningful interference with an individual's possessory interest in that property." Soldal v. Cook Cnty. Ill., 506 U.S. 56, 61, 113 S.Ct. 538, 121 L.Ed.2d 450 (1992) (internal quotation marks and citation omitted). It is also well established that possessory interests in property invoke procedural due process protections. *See* Fuentes v. Shevin, 407 U.S. 67, 87, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972). Dove fails to acknowledge the United States Supreme Court's expansive view of the concept of "seizure" under the Fourth Amendment. In Abbott v. Latshaw, 164 F.3d 141, 149 (3d Cir. 1998), the Third Circuit Court of Appeals held that Abbott should be allowed leave to amend his complaint to add a Fourth Amendment cause of action where officers seized a vehicle he claimed to own, despite the fact he did not have title, "in light of the Supreme Court's expansive view of the concept of 'seizure' under the Fourth Amendment, as set forth in Soldal v. Cook County, Ill., 506 U.S. 56, 61–65, 113 S.Ct. 538, 121 L.Ed.2d 450 (1992).

In Abott, the "defendants argue[d] that Abbott had no property interest in the van because he did not list it among his assets in a prior bankruptcy proceeding and is therefore judicially estopped from claiming he owns it. They also contend that his ownership of the van was uncertain because it was not explicitly awarded to him in the divorce proceedings. <u>Because deprivation of a possessory interest alone invokes the right to procedural due process</u>, we need not consider these arguments as to who owned the van." Abbott v. Latshaw, 164 F.3d 141, 146, Fn.2 (3d Cir. 1998)(emphasis).

Issa has also plausibly pled Dove unlawfully invaded his homestead and seized vehicles to search them and then placed junk car stickers on the vehicles. Issa has alleged the City physically intruded upon his cars in searching and seizing them, then in stickering vehicles as junk cars and inoperable. Issa plausibly pleads that Dove's conduct in this impaired the utility and the value of Issa's cars.

Dove seized, searched, and stickered under an ordinance that Issa plausibly alleges sanctions warrantless searches and seizures when the code official is met with a resident's refusal to allow entry. Issa has also alleged Dove's conduct in citing Issa did not even meet the municipal ordinance elements to establish the automobiles in question were junk cars or nuisances.  "A public official's seizure under the authority of the statute of an automobile that does not meet the statute's requirements for seizure would clearly be unreasonable for Fourth Amendment purposes. Livingston v. Luken, 151 F. App'x 470, 475 (6th Cir. 2005).

Issa also alleges that Dove stickered the vehicles of business clients as junk car nuisances which has adversely impacted his livelihood and business. (¶46,54,100,174(B), Relief Requested (c)) Clearly Dove cited Issa for junk car nuisance by violations, neither Issa nor his business clients could operate these vehicles.  As junk cars they were inoperable public nuisances that had to be remedied. This adverse action impairing Issa's possessory interest did not end here. After Dove stickered the vehicles as junk cars, Issa was mandated by operation of law to take affirmative action to address and remedy a condition Dove cited as a nuisance. (¶36: Notice of Violation; Sec. 52-187 (b)(2)) This was an ongoing interference with Issa's possessory property interest. Asinor v. D.C., 111 F.4th 1249, 1256 (D.C. Cir. 2024). Dove's actions in this context, as alleged by Issa, are sufficiently laid out to state a meaningful deprivation of a property interest.

**2. Issa Alleges a Constitutionally Inadequate Nuisance Abatement Procedure**

Issa plausibly alleges the ordinance fails to provide precompliance review by a neutral and detached decision maker upon a resident's refusing entry to a code enforcement official. Issa alleges the City of Mobile has passed and enforced an ordinance, and executed by Dove, authorizing warrantless property invasions and seizures in violation of the Fourth Amendment.[2] (¶74) Issa has alleged the City of Mobile has a code enforcement policy or procedure authorizing warrantless entry and inspection of residential property holders without resorting to remedies provided by law to secure entry. (¶83-98,147) (Sec. 52-1 (§104.3: Right of Entry under The City of Mobile's Municipal Code). Subsequent to the filing of Doves. Motion To Dismiss, the City filed a Reply in Support of its Motion to Dismiss. (Doc.9) The City in its *Reply in Support of its Motion to Dismiss* agrees, at least at the motion to dismiss stage, this claim is plausibly pled. (Doc.9, PageID.260)

Additionally, the City of Mobile's Real Property Maintenance Code provides certain procedural guarantees before Dove may declare motor vehicles inoperable and public nuisances. Issa has plausibly alleged Dove violated this ordinance that the inoperable vehicle must be "<u>in the view of the general public for thirty-days or more</u> and is <u>inoperable</u>." Section 52.184 (¶71). Dove seems to confuse the thirty-day grace period per Section 52.184 with the thirty-day compliance mandate referenced in the Notice of Violation per Sec. 52-187 (b)(2).[3]

---

[2] Issa has requested declaratory relief pursuant to Ala. Code §6-6-220 and Rule 57 ARCP (¶11; Relief Requested). Issa seeks a declaration that the City of Mobile Property Maintenance Code require a search warrant before a code inspector may enter and inspect private property upon refusal by a property owner.

[3] Sec. 52-187 (b)(2) provides in part that "the notice of violation shall state that the owner of the vehicle is given thirty (30) days from the date the notice is received to either cause the vehicle to be removed from said property or to cause the vehicle to be stored in an enclosed building completely shielded from the view of individuals on the adjoining properties.

Issa has plausibly alleged that the City failed to abide by these procedural guarantees in that Dove cited Issa the same day as it inspected his property. Issa has alleged plausible inferences that Dove did not follow this rule, for if he did he would have clearly noticed that many of the vehicles were in fact operable, including Issa's own personal vehicle and those of his sons. Additionally, Issa has alleged many of the vehicles were located behind his gated residential fence not open to the general public clearly marked with a No Trespassing sign.(¶29,35,36,45,51,82)

### Sec. 52-1 (§104.3) of the City of Mobile Property Maintenance Code

> **104.3 Right of Entry**
>
> Where it is necessary to make an inspection to enforce the provisions of this code, or whenever the *code official* has reasonable cause to believe that there exists in a *structure* or upon a *premises* a condition in violation of this code, the *code official* is authorized to enter the structure or *premises* at reasonable times to inspect or perform the duties imposed by this code, provided that if such *structure* or *premises* is occupied the *code official* shall present credentials to the *occupant* and request entry. If such structure or *premises* is unoccupied, the *code official* shall first make a reasonable effort to locate the *owner*, owner's authorized agent or other person having charge or control of the *structure* or *premises* and request entry. ==If entry is refused, the *code official* shall have recourse to the remedies provided by law to secure entry.==

Issa plausibly pleads Sec. 52-1 (§104.3) of the City of Mobile Property maintenance code as adopted by municipal ordinance 65-048-2017 is facially unconstitutional, and as applied to him, in violation of the Fourth and Fourteenth Amendments. Issa has pled alternatively the ordinance does not on its face require the code official to seek the recourse to the remedies provided by law to secure entry, and places newly annexed citizens in the constitutional quandary repudiated in City of Los Angeles, Calif. v. Patel, 576 U.S. 409, 421, 135 S. Ct. 2443, 2452–53, 192 L. Ed. 2d 435 (2015). (¶74,86). Issa has plausibly pled that he could not oppose the unlawful warrantless invasion without facing arrest.

In <u>NILI 2011, LLC v. City of Warren</u>, No. 15-CV-13392, 2017 WL 5467746, at *7 (E.D. Mich. Nov. 14, 2017) the Plaintiff made a facial challenge to the City of Warren Michigan's code provision §104.3 containing the identical language of Mobile's §104.3 code provision Issa challenges.

> City of Warren Code
>
> Where it is necessary to make an inspection to enforce the provisions of this code, or whenever the code official has reasonable cause to believe that there exists in a structure or upon a premises a condition in violation of this code, the code official is authorized to enter the structure or premises at reasonable times to inspect or perform the duties imposed by this code, provided that if such structure or premises is occupied the code official shall present credentials to the occupant and request entry.... **If entry is refused, the code official shall have recourse to the remedies provided by law to secure entry**. (emphasis)

"The Court finds that reasonable jurors may disagree about whether Section 104.3 of the IPMC is facially unconstitutional given the City's immediate imposition of a fine following a refusal to grant access to a premises." <u>NILI 2011, LLC v. City of Warren</u>, No. 15-CV-13392, 2017 WL 5467746, at *7 (E.D. Mich. Nov. 14, 2017).

In the instant case, Issa has alleged a City of Mobile sanction far harsher than a mere fine. The City, and Dove executing the ordinance and city policy, make it a crime to refuse an inspection. (¶58-59) Dove notes on the actual description of the offenses of the criminal charging instruments that Issa "**Refused to allow inspections**" and "**Prevent Entry**." (¶58-59) In <u>Camara v. Mun. Ct. of City & Cnty. of San Francisco</u>, 387 U.S. 523, 540, 87 S. Ct. 1727, 1737, 18 L. Ed. 2d 930 (1967) the Court held this unconstitutional: "[A]ppellant had a constitutional right to insist that the inspectors obtain a warrant to search and that appellant may not constitutionally be convicted for refusing to consent to the inspection." If a citizen does not comply with the unlawful search and seizure sanctioned by the code, and executed by the code enforcement official, that citizen is charged criminally or at least is threatened with criminal prosecution for

failure to comply. Issa alleges he was charged by the City with obstructing government operations, failure to obey, and resisting arrest and faced with potential incarceration, and fines for his refusal to allow a warrantless entry and search. The City has authorized a policy that gives the homeowner no choice but to comply. The homeowner may not refuse to comply because the citizen must "**always do what the nice policeman tells you to do**" and because the code enforcement officer reminds one "**I'm the Police and what I say goes**! (¶49,56) After all, "**he who wears the gold shield calls the ball**." (¶49) In short, Issa plausibly alleges that he and thousands of other newly annexed citizens who refuse to consent to code inspector searches are forced to choose between consenting to a warrantless search and seizure or subjecting themselves to incarceration, fines, and penalties for refusing entry. (¶22) Such a scheme is unconstitutional on its face. "A hotel owner who refuses to give an officer access to his or her registry can be arrested on the spot. The Court has held that business owners cannot reasonably be put to this kind of choice." City of Los Angeles, Calif. v. Patel, 576 U.S. 409, 421, 135 S. Ct. 2443, 2452–53, 192 L. Ed. 2d 435 (2015) citing Camara, 387 U.S., at 533, 87 S.Ct. 1727 (holding that "broad statutory safeguards are no substitute for individualized review, particularly when those safeguards may only be invoked at the risk of a criminal penalty"). *See also* Landon v. City of Flint, No. CV 16-11061, 2017 WL 2798414, at *4 (E.D. Mich. June 27, 2017) "However, neither argument negates that Flint's previous inspection code did not, on its face, afford property owners an opportunity for pre-compliance review or suggest that they had the right to resist warrantless entries for inspections."

There is no precompliance review under Mobile's ordinance for a citizen who refuses to consent to a search. Instead, the citizen is left to the unfettered discretion of code enforcement officers- a dangerous prospect indeed as alleged by Issa in his complaint. As the United States

Supreme Court reminds us "Absent an opportunity for precompliance review, the ordinance creates an intolerable risk that searches authorized by it will exceed statutory limits or be used as a pretext to harass hotel operators and their guests. Even if a hotel has been searched 10 times a day, every day, for three months, without any violation being found, the operator can only refuse to comply with an officer's demand to turn over the registry at his or her own peril." Patel, 135 S. Ct. at 2452–53, (2015).

In Garner Properties & Mgmt. v. Charter Twp. of Redford, No. 15-14100, 2017 WL 3412080, at *11 (E.D. Mich. Aug. 8, 2017) the court was asked to pass upon a Fourth Amendment facial challenge to the Charter Township of Redford's IPMC § 104.4. This code provision included near identical language to Mobile's code.

> **Right of entry**. The code official is authorized to enter the structure or premises at reasonable times to inspect subject to constitutional restrictions on unreasonable searches and seizures. **If entry is refused or not obtained, the code official is authorized to pursue recourse as provided by law**. (emphasis)

The Court held that "Garner Properties survives summary judgment on its Fourth Amendment claim." Garner Properties & Mgmt. at *10 (E.D. Mich. Aug. 8, 2017). [4]

Issa has alleged as part of his procedural due process claim plausible facts that the City's ordinance fails to provide precompliance review (i.e. a warrant) by a neutral and detached magistrate or judicial officer when the code inspector is refused entry. Garner Properties & Mgmt. at *11 (E.D. Mich. Aug. 8, 2017); *see also* Landon v. City of Flint, No. CV 16-11061, 2016 WL 7661390 (E.D. Mich. Nov. 30, 2016), report and recommendation adopted, No. CV 16-11061, 2017 WL 345854 (E.D. Mich. Jan. 24, 2017). "To be clear, we hold only that a hotel

---

[4] Even the Charter Township of Redford's code contained constitutional restrictions that the City of Mobile's does not. Under the Charter Township's ordinance, if the occupant refuses an inspection in the Charter Township of Redford, the inspection does not occur. Garner Properties & Mgmt. v. Charter Twp. of Redford, No. 15-14100, 2017 WL 3412080, at *10 (E.D. Mich. Aug. 8, 2017)

owner must be afforded an *opportunity* to have a neutral decisionmaker review an officer's demand to search the registry before he or she faces penalties for failing to comply." City of Los Angeles, Calif. v. Patel, 576 U.S. 409, 421, 135 S. Ct. 2443, 2453, 192 L. Ed. 2d 435 (2015).

Here the City of Mobile's Code Provision lacks constitutionally adequate procedural protections as the ordinance is presently written and enforced. Catron v. City of St. Petersburg, 658 F.3d 1260, 1269 (11th Cir. 2011) The ordinance on its face fails to instruct or require the code enforcement officers that "remedies to recourse provided by law" means get a warrant. For as the chief code inspector for the City Jack Dove notes under the law- it is the law that authorized him to inspect anything anytime. (¶49-50). "[D]ue process requires at least sufficient exactness to prevent arbitrary enforcement and give notice of what an individual must do to comply with the enactment." Belle Maer Harbor v. Charter Twp. of Harrison, 170 F.3d 553, 559 (6th Cir. 1999) The Supreme Court in Camara underscored the constitutional infirmity of such a scheme.

> Under the present system, when the inspector demands entry, the occupant has no way of knowing whether enforcement of the municipal code involved requires inspection of his premises, no way of knowing the lawful limits of the inspector's power to search, and no way of knowing whether the inspector himself is acting under proper authorization. Camara, 387 U.S. 523, 528–29 (1967)

As written and enforced, Mobile's ordinance sanctioned Dove to execute warrantless searches and seizures which are per-se unreasonable under the Fourth Amendment. Payton v. New York, 445 U.S. 573, 585–86, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980); Katz v. United States, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967).

Dove cites Ashe v. City of Montgomery, 754 F. Supp. 2d 1311, 1314 (M.D. Ala. 2010), but Ashe misses the mark as it involved inadequate notice and a purported violation of the Fifth Amendment Takings Clause. "The crux of this suit is whether Ashe received proper notice prior

to being deprived of his possessions by the city." Ashe v. City of Montgomery, 754 F. Supp. 2d 1311, 1316 (M.D. Ala. 2010) "A municipality cannot enact any ordinance it desires without regard to applicably federal and state constitutional limitations." K & D Auto., Inc. v. City of Montgomery, 150 So. 3d 752, 764 (Ala. 2014). In K & D Auto., Inc. v. City of Montgomery, 150 So. 3d 752, 758–59 (Ala. 2014) the Alabama Supreme Court held the plaintiff's Count 9 alleging "The City is wrongfully declaring certain vehicles without license plates to be unlawful public nuisances even though such vehicles can legally be operated on public streets" survives summary judgment. Importantly too, Ashe was adjudicated at the summary judgment stage.

**B. Issa alleges a Constitutionally Cognizable Seizure of Property (Count 2)**

Dove's motion is directed at Issa's allegations a seizure occurred when Dove deemed vehicles inoperable, junk cars, and nuisances. Issa alleges two distinct seizures. The first was Dove's act in seizing, searching, photographing, and inspecting the vehicles. The next seizure occurred when Dove chose to sticker the vehicles as junk car nuisances. (¶93,94,105,106) Both seizures are in clear violation of well accepted law. Collins v. Virginia, 584 U.S. 586, 588, 138 S. Ct. 1663, 1668, 201 L. Ed. 2d 9 (2018): "This case presents the question whether the automobile exception to the Fourth Amendment permits a police officer, uninvited and without a warrant, to enter the curtilage of a home in order to search a vehicle parked therein. It does not."

Secondly, Issa plausibly alleges Dove's on the spot determination that vehicles were junk cars and inoperable nuisances meaningfully interfered with his possessory interest and harmed his business. (¶105, ¶46,54,100,174(B), Relief Requested (c)) The City's code enforcement scheme is to place the nuisance stickers on the vehicles-so the world can see the vehicle is nuisance and unworthy of travel, i.e. "inoperable." "A seizure of property occurs when there is some meaningful interference with an individual's possessory interests in that property." United

States v. Jacobsen, 466 U.S. 109, 113 (1984) (internal quotation omitted). Dove would have the Court read asportation, destruction, or damage elements into the seizure calculus. This is unwarranted. *See* Asinor v. D.C., 111 F.4th 1249, 1256 (D.C. Cir. 2024) "True enough, the plaintiffs do not allege that the MPD has destroyed or physically damaged their property. But Jacobsen cannot fairly be limited to cases involving destruction of property." *See also* United States v. Place, 462 U.S. 696, 710, 103 S. Ct. 2637, 2646, 77 L. Ed. 2d 110 (1983) taking custody of Place's suitcase for 90 minutes was deemed an unlawful seizure for it unreasonably infringed "the suspect's possessory interest in his luggage."

In United States v. Jones, 565 U.S. 400, 402, 132 S. Ct. 945, 947, 181 L. Ed. 2d 911 (2012) the Supreme Court held:

> "We decide whether the attachment of a Global–Positioning–System (GPS) tracking device to an individual's vehicle, and subsequent use of that device to monitor the vehicle's movements on public streets, constitutes a search or seizure within the meaning of the Fourth Amendment….By attaching the device to the Jeep, officers encroached on a protected area." (emphasis)

Finally, what constitutes a meaningful interest in property is a fact intensive question that should not be resolved at that motion to dismiss stage in this instance. The Jacobsen case cited by Dove found a seizure occurred where the agents' asserted dominion and control over the package and its contents. United States v. Jacobsen, 466 U.S. 109, 120, 104 S. Ct. 1652, 1660, 80 L. Ed. 2d 85 (1984).[5] Issa has plausibly alleged that Dove seized Issa's property and vehicles to secure and enforce compliance with the City's property management code. Issa was no longer allowed to do with his own property and property of his business clientele as he saw fit. It is also a meaningful interference with Issa's business relationships with business customers and his

---

[5] "While the agents' assertion of dominion and control over the package and its contents did constitute a "seizure," that seizure was not unreasonable." United States v. Jacobsen, 466 U.S. 109, 120–21, 104 S. Ct. 1652, 1660, 80 L. Ed. 2d 85 (1984)

ongoing business concern. Other courts have held similar municipal abatement conduct as seizures within the Fourth Amendment calculus. *See* Livingston v. Luken, 151 F. App'x 470 (6th Cir. 2005) "allegation that police officer placed abandoned vehicle sticker on car despite fact that car was clearly operable and worth more than $1500 supported claim that placement of sticker on vehicle caused an unreasonable seizure in violation of owner's Fourth Amendment rights."

### C. Abuse of Process (Count Nine)

Dove alleges the abuse of process count must fail because Issa fails to allege the wrongful *use* of process *after it has been issued*. Dove does not deny Issa has plausibly alleged the existence of an ulterior purpose or malice. Dove asserts that "Merely instituting a criminal prosecution which is subsequently dismissed will not give rise to a claim for abuse of process because "*there is no liability where the defendant has done nothing other than carry out the process to its authorized conclusion, even though with bad intentions.*" Willis, 814 So. 2d at 865(emphasis original). Willis was decided after a jury verdict in favor of plaintiff and not at the motion to dismiss stage. Willis v. Parker, 814 So. 2d at 867 (Ala. 2001).

Despite this, the problem with Dove's arguments is that according to the complaint, Dove withheld exculpatory information *after* the institution of criminal proceedings. Dove knowingly filed criminal charges in the wrong jurisdiction *after* the arrest. Dove's misrepresentation of material facts to the magistrate occurred *after* the arrest. Dove's actions of withholding exculpatory information *after the initiation of criminal proceedings* plausibly alleges an overt act beyond the mere initiation of criminal proceedings. Issa has alleged:

1. Dove falsely swore before a magistrate that Issa's cars were junk cars, when in fact they were his personal vehicles or those of his sons and did not violate the operative municipal ordinance. (¶59)
2. Dove intentionally omitted critical and exculpatory evidence including his initial interaction with Issa which would have shown Issa did not obstruct governmental operations, resist a lawful arrest, or fail to obey a lawful order. (¶60,61,114)

3. Dove falsely swore to a violation of municipal ordinance without probable cause and from an improper motive. (¶37, 61-68,72,101,105.168-179)
4. Dove never communicated these operative set of facts to the magistrate, when signing the complaint and pursuing and maintaining prosecution *after* the criminal cases were docketed in the City of Mobile Municipal Court. (¶59, 60,61,114)
5. Dove falsely swore to a City of Mobile municipal court magistrate that his interaction with Issa was "all recorded on BWC [body worn camera]" (¶59)
6. Dove intentionally chose not to record exculpatory evidence. (¶60,61,114)
7. Dove intentionally chose to bring the charges in the City of Mobile Municipal Court when that court had no jurisdiction over the state offense Dove charged Issa with. (¶63)

*After* the initiation of the criminal proceedings, Dove actively continued to withhold this exculpatory evidence and maintain criminal prosecution. Other courts have held similar conduct as plausibly stating a claim for abuse of process. Garcia v. City of Merced, 637 F. Supp. 2d 731, 751 (E.D. Cal. 2008)

> "Assuming all allegations of the non-moving party to be true, the obtaining of an arrest warrant by false evidence; concealing of exculpatory evidence to an issuing magistrate, thereby wrongfully obtaining a warrant to arrest and search Plaintiff's car and office; then arresting and imprisoning Plaintiff can amount to abuse of process because an arrest warrant is not to be used for unlawful retaliation that results in the wrongful arrest and incarceration of an innocent party."

*See also* Gonzalez Rucci v. U.S. I.N.S., 405 F.3d 45, 50 (1st Cir. 2005) "obtaining search and arrest warrants by means of false testimony is a proper basis for a claim of abuse of process (at least for pleading purposes)." The complaint plausibly alleges that Dove obtained the charges by presenting testimony he knew to be false to the magistrate and then choosing to continue in his deception while the machinery of prosecution ensued. He allowed the case to proceed. Dove simply seeks to wring his hands from this abuse of process claim under the auspice of "merely instituting a criminal prosecution." Dove's act of actively presenting false testimony and withholding exculpatory evidence did not end with the institution of criminal charges. It was the filing *and the maintaining* of the criminal prosecution which gives plausible rise to Issa's abuse of process claim. Issa was docketed for prosecution, retained an attorney, and ultimately had the

charges nolle prossed all after the initiation of criminal proceedings. (¶68)[6] It is Dove's *pursuit of the criminal prosecution* against the "Iraqi" which Issa plausibly alleges establishes something beyond merely instituting a criminal prosecution.

Giving false testimony to a magistrate and then allowing the prosecution to proceed knowing the allegations are false is enough. *See* S. Arkansas Petroleum Co. v. Schiesser, 343 Ark. 492, 502–03, 36 S.W.3d 317, 324 (2001): Johnson "gave testimony before [the magistrate judge] at the probable cause hearing that Schiesser had taken all this money when, in fact, the documents show that other people completed the reports. He did not reveal that. [Instead] he continued to pursue criminal process at that point in time, for unwarranted and perverted purposes." *See also* Routh Wrecker Serv., Inc. v. Washington, 335 Ark. 232, 240, 980 S.W.2d 240, 244 (1998) "Routh allowed the case to proceed to a hearing in municipal court for the coercive purpose of collecting the $400. This is enough for Washington's case to survive a directed verdict for abuse of process." In Harmon v. Carco Carriage Corp*., 320* Ark. 322, 895 S.W.2d 938 (1995) "The defendant completed an affidavit for a warrant for plaintiff's arrest, stating that the plaintiff had leased the car and refused to return it. After the warrant was issued, the defendant did nothing to stop the proceedings even though it was told the car was available to be picked up. In holding that summary judgment in favor of the defendant on the abuse-of-process claim was error, we noted a potential abuse of process in the defendant's failure to do anything to prevent the issuance of the arrest warrant or the trial itself. (emphasis) "In holding that summary judgment in favor of the defendant [in Harmon] on the abuse-of-process claim was error, we noted a potential abuse of process in the defendant's failure to do

---

[6] Issa never averred in his complaint the charges were dismissed for lack of jurisdiction as Dove alleges. (Doc.6, PageID.230)

anything to prevent the issuance of the arrest warrant or the trial itself." Routh Wrecker Serv., Inc. v. Washington, 335 Ark. 232, 239, 980 S.W.2d 240, 243 (1998)

## II. ISSA STATES PLAUSIBLE CLAIMS

As to Count One Issa has plausibly alleged the Dove's unlawful warrantless invasion of constitutionally protected areas and seizures of automobiles without precompliance review by a neutral and detached decisionmaker triggers due process protection. The ordinance is unconstitutional on its face or as applied to Issa. This ordinance, policy, and custom was the moving force behind the legal cause of Issa's injury and damages.

Dove's conduct plausibly alleges a meaningful interference with the possessory interest of Issa in both the initial seizure of the vehicles to search, and in his subsequent decision to sticker vehicles of Issa, his sons, and business customers as junk cars. (¶74,101,105,106) The meaningful seizure and meaningful interference with his cognizable property interests continued on, for vehicles deemed junk cars and nuisances required additional affirmative conduct by law to remedy the nuisance and harmed his business.

As for the abuse of conduct count, Issa has plausibly alleged Dove's conduct after the initiation of criminal proceedings.

In the final analysis, Issa's averments are not so implausible that the complaint cannot be maintained at this stage of the proceedings. Based on the foregoing "there is more than a sheer possibility" Issa has pled plausible claims that Dove seeks to dismiss. Iqbal, 129 S.Ct. at 1949.

                              Respectfully submitted,

                              /s/ Matt Green
                              Matt Green, Esq. (GREEM9500)

OF COUNSEL:
Matt Green, Esq.
The Law Office of Matt Green, LLC
*The Pollock-Altmayer House*
501 Government Street, Suite 1

Mobile, AL 36602
P: (251) 434-8500
F: (251)408-3265
E: matt@mattgreen.lawyer

CERTIFICATE OF SERVICE

I hereby certify that on the 14th day of April 2025, a copy of the foregoing Response to Defendant's Motion to Dismiss was served upon the parties or counsel for all parties by placing same in the United States mail, properly addressed and postage prepaid, and/or via the Court's electronic filing system as follows:

Taylor Johnson, Esq.
Kristy Waldron, Esq.
BURR & FORMAN LLP
11 N. Water Street, Suite 22200
Mobile, AL 36602

/s/ Matt Green
Matt Green, Esq.