**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | |
|---|---|
| **ABDALI ALI ISSA,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**CITY OF MOBILE; et al,**<br><br>**Defendants.** | **Case No.: 1:25-cv-00106-WS-MU** |

# PLAINTIFF ISSA'S MOTION TO COMPEL PRODUCTION OF WITHHELD MATERIALS AND COMPLETE DISCOVERY RESPONSES

Plaintiff Issa moves under Rule 37(a) to require the City to produce the materials listed in its August 5, 2026, Log of Materials Withheld from Production and to provide complete supplemental discovery responses.

## PROCEDURAL POSTURE

Before filing this motion, Issa conferred with the City in good faith as required by Rule 37(a)(1) and the Local Rules to resolve this discovery dispute. The parties were unsuccessful. Thereafter the parties participated in court supervised mediation efforts telephonically. After the court discovery mediation phone conference, Issa narrowed his discovery request. On July 28, 2026, counsel for Issa sent a letter that proposed the narrowed discovery addressed by the City's supplemental responses. (Exhibit A) The City responded by providing supplemental discovery but still withholding evidence as documented by its privilege log. (Exhibit B) Having been unsuccessful in obtaining the requested discovery, Issa now seeks court intervention to compel the Defendants to respond fully to its discovery request. Because the defendants have failed to provide

the necessary discovery in a timely fashion, Issa is at a decided disadvantage meeting the discovery deadline.

## I. INTRODUCTION

The City's supplemental production establishes that the requested discovery exists, bears directly on the issues in this case, and is being withheld based on grounds that do not support nondisclosure in federal court. The City invokes Ala. Code § 12-21-3.1 and asserts a blanket law enforcement investigative privilege as to every category of withheld material, using the same boilerplate paragraph for each entry in its log. The materials withheld include:

1. The contents of the disciplinary and complaint files the City places outside Rule 26(b), including the 1987 and 1989 files, the summary of Dove's disciplinary history since 1983, and the 2017 complaint that the City closed without investigating;

2. The complete contents of the nine internal affairs files that the City itself identifies as falling within Rule 26(b);

3. Dove's statements, together with the statements of the officers who were present, concerning the incident at issue in this action; and

4. Dove's investigative narratives concerning other code-enforcement activity in the annexed areas, which constitute Issa's comparator evidence.

This motion also seeks relief concerning two matters that do not appear in the log: supplemental written responses that remain incomplete and records that the City's own body-camera policy required Dove and his supervisors to create. The City's own submissions undermine its objections. Its verified supplemental responses state that the 1987 complaint arose from Dove's official report, which was "offensive and disrespectful of minorities," and that the 1989 complaints alleged he "punched, choked, and slapped" arrestees, conduct that resulted in his termination before the discipline was reduced on appeal. The City's log itself points Issa to published federal decisions describing the same conduct. Having acknowledged that the conduct is documented in

public judicial decisions, the City cannot at the same time characterize its own records of that conduct as private, privileged, and irrelevant.

The City's dispositive briefing makes the contradiction even more pronounced. In seeking dismissal of the municipal counts, the City relies on the assertion that Issa "does not point to any other instance or example of unconstitutional conduct on the part of the City" and has alleged no pattern. (Doc. 4, COM MTD.) In its reply, the City likewise relied on the Complaint's allegation that Dove "has a history of misconduct and acts of physical violence towards citizens" in support of dismissal of the state-law counts. (Doc. 9, COM Reply.) Yet the City is withholding the very records that could demonstrate the alleged pattern while simultaneously relying on Dove's pleaded history. Discovery reaches matter relevant to any party's claim *or defense*, Fed. R. Civ. P. 26(b)(1), and the City's own defenses therefore place these materials directly at issue. Issa respectfully asks the Court to reject the City's objections and grant the relief requested in this motion.

## II. GOVERNING LAW

The United States Supreme Court has recognized in the face of privilege challenges that "the public . . . has a right to every man's evidence." *Trammel v. United States*, 445 U.S. 40, 50, 100 S. Ct. 906, 912, 63 L. Ed. 2d 186 (1980) Also our nation's highest court has affirmed the truth that privileges should not be "lightly created nor expansively construed, for they are in derogation of the search for truth." *United States v. Nixon*, 418 U.S. 683, 710, 94 S. Ct. 3090, 3108, 41 L. Ed. 2d 1039 (1974).

In the instant case the City asserts multiple privileges in an overly expansive fashion to obstruct Issa's search for the truth. For instance, in multiple objections raised by the City it asserts Ala. Code §12-21-3.1. However, federal common law governs privilege in this federal question case, even as to pendent state claims. *Hancock v. Hobbs*, 967 F.2d 462, 466-67 (11th Cir. 1992);

Fed. R. Evid. 501, Notes of Committee on the Judiciary, Senate Report No. 93-1277. A state nondisclosure statute does not create a federal privilege. *Jordan v. Comm'r, Miss. Dep't of Corr.*, 947 F.3d 1322, 1336 (11th Cir. 2020). Courts in Alabama have applied these principles to reject a city's invocation of Ala. Code § 12-21-3.1 in federal litigation. *Jones v. Lotte Chem. Ala. Corp.*, No. 2:23-CV-531, 2024 WL 3868200, at *1-2 (M.D. Ala. Aug. 19, 2024). The statute is inapplicable here, and its repetition throughout the City's log is improper. Even on its own terms, the provision the City quotes provides for production "upon proper motion and order from a court of record." Ala. Code § 12-21-3.1(c). This is that motion.

The federal law enforcement investigative privilege invoked by the City is qualified, not absolute. It protects ongoing investigations and the identities of confidential informants, *Coughlin v. Lee*, 946 F.2d 1152, 1159-60 (5th Cir. 1991), does not apply indefinitely, *Swanner v. United States*, 406 F.2d 716, 719 (5th Cir. 1969), and yields upon a balancing of the litigant's need against the government's interest in confidentiality. *Frankenhauser v. Rizzo*, 59 F.R.D. 339, 344 (E.D. Pa. 1973); *Kelly v. City of San Jose*, 114 F.R.D. 653, 660-63 (N.D. Cal. 1987); *Sirmans v. City of South Miami*, 86 F.R.D. 492, 495 (S.D. Fla. 1980). The party asserting a privilege bears the burden of establishing it, *Jenkins v. Koch Foods, Inc.*, 2020 WL 12992000, at *2-3 (M.D. Ala. March 11, 2020), and must document, with the specificity Rule 26(b)(5)(A) requires, why each withheld item falls within the privilege; absent that showing the court cannot conduct the balancing and the privilege fails. *Jones*, 2024 WL 3868200, at *1-3 (denying protection in part where the city produced no adequate documentation, identified no governmental interest, and showed no ongoing investigation). Additionally, the deliberative process privilege applies only to communications about policy formulation at high levels of government and does not shield all official decision-making. *See Jones v. City of College Park, Ga.*, 237 F.R.D. 517, 520-21 (N.D. Ga. 2006); *FSI*

*Green Park South Property, LLC v. City of Pelham*, No. 2:18-CV-1211-GMB, 2021 WL 12319530, at *2-3 (N.D. Ala. Oct. 1, 2021). More importantly, the privilege does not apply at all, and no balancing is required, where government misconduct is the focus of the lawsuit, the governmental decisionmaking process is the subject of the litigation, or the discovery seeks to expose governmental malfeasance. *See id*.

The City's log satisfies none of this. Every entry carries the same conclusory paragraph reciting "internal investigative processes, evaluative assessments, credibility determinations, and pre-decisional communications," without any document-specific analysis. Boilerplate, conclusory assertions of this kind do not satisfy the City's Rule 26 burden. *See Panola Land Buyers Ass'n v. Shuman*, 762 F.2d 1550, 1559 (11th Cir. 1985); Fed. R. Civ. P. 34(b) (2)(B)-(C). Indeed, a party withholding discovery "must also provide sufficient information to enable other parties to evaluate the applicability of the claimed privilege." Fed. R. Civ. P. 26 advisory committee's note to 1993 amendment. Perhaps most importantly this failure deprives the Court of any meaningful opportunity to evaluate the legitimacy of the claimed privilege.[1] The log is signed by counsel; no declaration from the Chief of Police or mayor or any responsible official invokes the privilege, identifies a governmental interest, or attests that any investigation remains open. Every underlying matter is closed, the charges against Issa were dismissed, no criminal investigation is pending, and the "complainants" whose confidentiality the privilege might protect are the very citizens whose complaints Issa seeks. The balancing is not close. The requested materials are likewise central to Issa's pending claims and defenses. Issa's §1983 municipal claim challenges an alleged official policy or unconstitutional custom of enforcing the property-maintenance ordinance through

[1] Some courts have mandated in-camera review of the documents over a privilege assertion made without specificity and in the abstract. <u>FSI Green Park S. Prop., LLC v. City of Pelham, Alabama</u>, No. 2:18-CV-1211-GMB, 2021 WL 12319530, at *5 (N.D. Ala. Oct. 1, 2021)

warrantless entries without lawful recourse, making evidence of how the City treated other annexed owners and handled related complaints directly relevant. The pending state-law claim for negligent hiring, training, supervision, and retention likewise turns on what the City knew about Dove and how it responded to indications of his unfitness as a peace officer. Prior complaints therefore supply the municipal notice relevant to both theories. *See* City of Canton, Ohio v. Harris, 489 U.S. 378, 397, 109 S. Ct. 1197, 1209, 103 L. Ed. 2d 412 (1989) holding "municipal liability for failure to train may be proper where it can be shown that policymakers were aware of, and acquiesced in, a pattern of constitutional violations involving the exercise of police discretion. In such cases, the need for training may not be obvious from the outset, but a pattern of constitutional violations could put the municipality on notice that its officers confront the particular situation on a regular basis, and that they often react in a manner contrary to constitutional requirements." *See also Fundiller v. City of Cooper City*, 777 F.2d 1436, 1443 (11th Cir. 1985) (history of widespread abuse puts supervisors on notice; persistent failure to discipline officers can infer a municipality has ratified conduct to establish a *Monell* "custom"); *Gold v. City of Miami*, 151 F.3d 1346, 1351-52 (11th Cir. 1998) (without evidence that prior complaints had merit, municipal liability fails as a matter of law for lack of notice that a failure to train and supervise would infringe on constitutional rights). Courts in Alabama have compelled precisely this discovery, including unsustained complaints and files reaching entire departments. *Williams v. City of Birmingham*, 323 F. Supp. 3d 1324, 1336-37 (N.D. Ala. 2018); , at *1-3 (M.D. Ala. July 5, 2005).

Independent of any municipal theory, these materials are discoverable as to the claims against Dove in his individual capacity, none of which the City's motion reaches. Dove's intent, motive, credibility, and state of mind are directly in issue on Issa's First Amendment retaliation, Fourth and Fourteenth Amendment, malicious prosecution, wantonness, and outrage claims

against him. Prior complaints of similar conduct are probative of motive, intent, plan, and absence of mistake, and of punitive damages, which ask whether he acted with evil motive or reckless indifference to federally protected rights, *Smith v. Wade*, 461 U.S. 30, 56 (1983); of credibility and impeachment; and of the qualified immunity defense he has asserted. Discoverability does not depend on ultimate admissibility. Fed. R. Civ. P. 26(b)(1).

## III. THE WITHHELD MATERIALS AND DEFICIENT RESPONSES

### A. Category 1: Disciplinary history the City wrongly designates outside Rule 26(b).

***The 1987 file***. The City's own log directs Issa to a published federal decision, *Boone v. Mingus*, 697 F. Supp. 1577, 1578-79 (S.D. Ala. 1988), *aff'd*, 880 F.2d 419 (11th Cir. 1989), that describes the factual contents of the file: following an incident in Happy Hills, a predominantly African-American housing project in Mobile, then-Sergeant Dove authored an official Supervisor's Investigation Report describing residents as having "**limited intelligence**" and an "**animalistic social response**" to police presence, for which he was suspended before the discipline was reduced on appeal. Sergeant Dove wrote in his report the reason for the assault of a fellow officer was based on: "**Ignorance of the unknown perpetrator in an animalistic social response to the sight of the police in his neighborhood/habitat**." The City's verified supplemental responses likewise admit the report was "offensive and disrespectful of minorities." The issue is not remote or unrelated misconduct. The MPD's own Rules of Conduct prohibit demeaning a person's "race, nationality, religion, sex, or ethnic origin" and bar bias-based profiling. (COM 506, Rules 8.10-8.11.) The 1987 file is therefore probative of prior discipline for conduct within the same category prohibited by those rules and alleged by the Complaint. Issa, an Iraqi-born Muslim, alleges that Dove mocked his national origin and faith during a warrantless search and arrest and was a moving force behind Dove's treatment of Issa. A prior disciplinary

matter involving prejudiced statements in an official report is accordingly relevant to the animus and state of mind at issue in the claims identified in Section II, as well as to the reliability of Dove's official written narratives, which are themselves disputed here. The City's remaining objections fail for the reasons explained in Section II. Its privacy objection also fails on two independent grounds: the conduct is already described in published federal opinions cited by the City, and any remaining privacy concern can be addressed through redaction and the protective order already entered in this case. *See Kelly v. City of San Jose*, 114 F.R.D. 653, 661 (N.D. Cal. 1987) adopting in these kinds of civil rights cases a balancing approach that is moderately pre-weighted in favor of disclosure.

***The 1989 files (1-1989-0012; 1-1989-0057)***. The log identifies three instances of force in early 1989, involving punching, choking, slapping, and kneeing arrestees, and states that the resulting termination was reduced on appeal to a 78-day suspension. These files are central to Count Five because they document the City's actual knowledge of Dove's violent propensities, its decision to terminate him, and the reinstatement that returned him to service, the sequence pleaded in the Complaint. The City's temporal-remoteness argument inverts the retention claim: the older the notice, the longer the City knowingly retained Dove despite that notice. Its storage-burden objection identifies the location of the files at the former Graystone Christian school but does not explain what retrieval would require. *See Panola Land Buyers Ass'n*, 762 F.2d at 1559 (general objections that requests "require too much time, are expensive to complete, ... and entail unreasonable geographic compliance" are "merely conclusory" and fail to satisfy the specific showing required to escape discovery). Two files stored at an identified location do not demonstrate an undue burden. That the search would be "manual" does not establish how long the retrieval would take, what it would cost, or how many boxes would need to be searched.

***The Employee Disciplinary History summary and File M2016-0097***. The single summary recording Dove's discipline since 1983 is the most direct and efficient means of showing what the City knew and when, while imposing little retrieval burden. The 2016 discipline concerning documentation practices also bears on the reliability of Dove's reports and investigative narratives, including those he prepared concerning the incident at issue.

***File 17IA-0131 and the 2017 re-hiring***. The log states this February 22, 2017 citizen complaint was "not investigated due to Dove's retirement." The City's own production shows what that retirement was: by letter dated February 15, 2017, the Mayor appointed Dove as Inspector and Blight Removal Liaison effective March 4, 2017, in an at-will position, authorized under Ala. Code § 11-44C-40, serving at the Mayor's pleasure and exempt from Personnel Board rules, with salary increases tied to "the goals and benchmarks set by the Mayor." (COM 508, 510.) By Executive Memo dated October 20, 2017, the Mayor further mandated that the position "shall be filled by a full-time, sworn law enforcement officer with arrest powers." (COM 509.) The City thus treated a pending complaint as moot because of "retirement" during the same weeks it was re-hiring Dove into a sworn position with arrest powers, outside merit-system oversight. That sequence bears directly on Count Five and on Issa's §1983 allegation that the enforcement scheme was carried out under the imprimatur of the City's highest policymaker.

**B. Category 2: Dove's Nine internal affairs files the City concedes are within Rule 26(b).**

The City's log designates these files "Complaints Within the Scope of Rule 26(b)" and asserts only two objections to their contents: the law enforcement investigative privilege and Ala. Code § 12-21-3.1. The City has therefore conceded relevance and proportionality, and it has waived work product, attorney-client, deliberative process, and every other ground by omission.

Fed. R. Civ. P. 26(b)(5)(A); 34(b)(2)(C). The two asserted grounds fail for reasons in Section II. That resolves this entire category, and the withheld contents must be produced.

The contents are independently deficient as privilege claims. Dove's narrative statements are his own factual account of his conduct as a defendant. Civilian statements, including the recorded interview of Olivia Bolton, likewise recount facts supplied by third parties rather than deliberative MPD communications. Investigative reports, LETS reports, and tracking forms document the actions the MPD took; they do not themselves constitute pre-decisional policy deliberations. The command-review executive summaries likewise concern the MPD's institutional evaluation and handling of complaints against Dove. That subject is directly tied to Issa's claims because the City's investigative dispositions and disciplinary decisions bear on whether it acted with deliberate indifference. The dispositions disclosed in the log make that relevance especially clear. During five years of complaints arising from Dove's task-force duties, including two findings of "improper conduct" and several findings of "substantiated/proper conduct," the log identifies no discipline. The underlying files therefore bear on what the City knew, what conduct it tolerated, and what it regarded as "proper" code-enforcement conduct.

***File 21IA-0121***. This is the only file in which the City's investigators found "improper conduct" concerning search, procedure, and property allegations, making it the closest comparator to the incident at issue. The City reports that "MPD is searching for the evidentiary contents of this file." The most probative file identified in the log is therefore the one the City says it cannot presently locate. Issa asks the Court to direct the City to complete a diligent search within fourteen days and to submit a sworn declaration identifying the file's status, location, custodial history, and the search performed. Issa reserves all rights concerning spoliation pending that declaration. The log's internal errors underscore its inadequacy under Rule 26(b)(5): the tracking form for File

20IA-0307 is listed under File 20IA-0328, and an August 17, 2020 statement concerning a 2020 incident is listed within the 2021 file 21IA-0311. Issa requests corrected identification with production.

**C. Category 3: The City's investigation of the subject incident.**

The City is withholding Dove's same-day investigative narrative; his November 8, 2023 memorandum narrative statements to his lieutenant and the Chief of Police; the narrative statements of the three officers who were on scene and witnessed Dove's interaction with Issa; the investigating lieutenant's narrative and recommendations; and emails that the log characterizes as concerning "anticipated litigation." The City again relies only on the law enforcement investigative privilege and Ala. Code § 12-21-3.1. Those objections fail for the reasons stated above, and the circumstances here make the privilege claim particularly weak. The investigation is closed, the charges against Issa were dismissed, and the withheld materials consist of Dove's, the responding officers', and the investigating lieutenant's own factual descriptions of the central events in dispute. Dove was not disciplined by the City in this event. The produced BWC recordings already capture portions of those events, further diminishing any asserted confidentiality interest in written accounts of what the Court and jury will see on video.

As to the "anticipated litigation" emails, they appear to be generated within mere days of the event, and the City asserted neither work product nor attorney-client privilege, and those protections are therefore waived. Fed. R. Civ. P. 26(b)(5)(A). First, the emails were generated within mere days of the underlying event, underscoring that they reflect routine, contemporaneous communications rather than privileged legal advice or protected trial preparation. Second, the City failed to assert attorney–client privilege or work-product protection for these emails as required, including by not complying with Federal Rule of Civil Procedure 26(b)(5)(A), which obligates a

party withholding information on a claim of privilege or trial-preparation protection to expressly make the claim and to describe the nature of the documents, communications, or things not produced or disclosed in a manner that—without revealing privileged or protected information—will enable other parties to assess the claim. The City's omission forfeits any such protection and warrants production of the emails. Fed. R. Civ. P. 26(b)(5)(A).

If the City belatedly claims work product, the claim would fail on this record. The MPD's own policies required supervisory review and documentation of BWC footage involving citizen complaints and uses of force, so review of this incident was routine administration. (COM 496, §§ III.G.2-G.3.) The City bears the burden of establishing, document by document, that litigation rather than routine administration motivated each document's creation.

The lieutenant's evaluative recommendations, if anything, present the only entry warranting individualized treatment. Issa proposes that any genuinely evaluative portions be addressed through targeted redaction with the factual content produced, or through in camera review, the procedure used in *Stovall*, 2005 WL 8173725, at *1-3. The narrative statements of Dove, Smith, Bishop and Smith withheld are eyewitnesses to the event. Finally, the city has withheld David Daughenbaugh documents, who in addition to being a fact witness, has been disclosed as an expert for the City.

**D. Category 4: Dove's narratives for other code enforcement incidents.**

The City withholds Dove's investigative narratives and synopses for at least seven other code-enforcement matters from May through October 2023, along with the file for Incident #M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 at 1671 Leroy Stevens Road created on the same day as the subject incident. The City's privilege position fails at the outset because these are routine municipal code-enforcement records (narratives concerning junk-vehicle inspections and property conditions), not the

investigative files of criminal law-enforcement proceedings. The asserted qualified privilege therefore does not protect these materials.

The City's withholding also conflicts with the position taken in its supplemental responses. In response to RFPs 6, 7, and 12, the City says it produced "all non-privileged ME [municipal enforcement] records" concerning the annexation areas. Yet Dove's own narratives about activity at other properties are central to that production: they identify the inspections performed, whether entry was sought or refused, whether a warrant was sought or refused, the notice or grace period provided, and the enforcement that followed. Those details are the evidence of the City's actual enforcement practice and are also relevant to whether Dove singled out Issa. The City cannot simultaneously say it produced the enforcement record and withhold the documents that describe how that enforcement occurred. The Leroy Stevens Road file is independently relevant to Interrogatory 4, which remains incomplete because the City has not fully explained how Issa's property came to its attention, who complained, or when. The records should therefore be produced in full.

**E. The supplemental responses remain deficient independent of the log.**

***Interrogatory 6***. The City answered the interrogatory's five subparts, the nature of each complaint, the complainant, a summary of the investigation, the investigator, and the disposition, by referring Issa to documents whose substantive contents it simultaneously withheld. Reliance on Rule 33(d) is proper only where the answer can actually be derived from the records produced; it cannot be derived from records the City has gutted by privilege designation. The City should be ordered to answer the interrogatory fully, in writing, for every complaint in its possession, including the 1987 and 1989 complaints, or to produce the complete underlying files from which the answers can be derived.

***The comparator production***. The City restricted its production to "founded" investigations involving only inoperable and junk vehicles during July through December 2023. Those limitations were self-imposed by the City and materially narrow the comparator evidence. Unfounded and no-action matters are particularly useful because they identify owners who were investigated but not cited or arrested, allowing comparison between the treatment of those owners and Issa. If other annexed owners received notice and the ordinance's grace period, that supports the inference that Issa was treated differently; if they did not, that supports the alleged enforcement custom. The City also omitted records involving refusals to permit inspections, despite Request 7. It should be ordered either to produce those records or to state in a verified response that no person other than Issa has been cited or arrested for refusing an inspection. The December 2023 cutoff should likewise extend through Dove's retirement, consistent with Issa's July 28 letter. The City should identify by Bates range which produced documents correspond to each request. Fed. R. Civ. P. 34(b)(2)(E).

**F. Production required by the City's own body camera policy.**

The City's produced BWC policy (COM 491-497) required Dove to activate his camera for "all contacts with citizens in the performance of official duties" and to keep it activated until the event concluded. Section III.C.10 separately requires that an officer who fails to activate, interrupts, or terminates a recording "shall document on their daily activity report and, if applicable, in any written report why a recording was not made, was interrupted, or was terminated." The MPD's Rules of Conduct make failure to activate a disciplinary violation. (COM 506, Rule 8.14.) The Complaint alleges and the City has admitted Dove's camera was off during his initial encounter with Issa. Issa has alleged that Dove later swore under oath to a municipal magistrate this encounter was recorded. Accordingly, within Issa's existing Requests 16 and 23,

the City should be ordered to produce: (1) Dove's daily activity report for October 24, 2023 and any written documentation explaining why his BWC was not activated or was interrupted; (2) the Evidence.com audit trail and NOTES entries for all BWC files associated with the incident, which the policy states are automatically logged and time-stamped for every viewing (COM 493-494, §§ III.D.10, III.D.13), including any viewing by Dove before he authored his November statements; and (3) the supervisory review records the policy requires for video involving citizen complaints (COM 496, §§ III.G.2-G.3). These are ordinary-course records required by the City's own policy; no privilege plausibly attaches.

## IV. ISSA'S NEED FOR THE DISCOVERY AND UNDUE HARDSHIP

Issa has alleged a pattern of unconstitutional conduct committed by Dove prior to the Issa incident bearing upon his fitness to serve as peace officer. Issa must prove these prior instances as required by *Monell* to support a custom sufficient to support municipal liability. The City asserts a single-instance defense (Doc.4 at 8) This four-decade history of Dove is reasonably calculated to lead to the discovery of admissible evidence to show that the City was on notice of Dove's history of misconduct. One of the most critical pieces of evidence in the case is Dove's bodycam which would have captured his illegal entry and encounter Issa. However, the City has admitted Dove failed to activate his bodycam and asserts that not all of Dove's conduct was recorded on the bodycam. Dove has admitted this. (COM, RFA 25, 26) Without the bodycam, Issa has a substantial need for the complete investigative file regarding the incident including all the witness statements and investigation of the incident. Otherwise, Issa is left with Dove's self-serving version of events. Finally, Dove does not remember much of his prior history, so Issa has a substantial need for the discovery. (Dove, Rog 11: "Over the course of my law enforcement career, I know that I was named in multiple lawsuits as a defendant or witness…I do not recall the style, jurisdiction, or

dates of all of these suits…I do not recall the style of the case and do not have any records of the matter." When asked the number of times he has cited persons with any offense after being refused entry to their property, Dove's memory fails again: "I do not recall the exact number." (Dove, Rog 24)

## V. DOVE'S MISCONDUCT AND COMPLAINTS IN THE CODE ENFORCEMENT REALM MERIT A FULL AND ROBUST DISCOVERY INTO HIS MISCONDUCT AS A PEACE OFFICER


Capt. Jack Dove
Commander , Police Inspector
MUNICIPAL ENFORCEMENT TASK FORCE
MPD Special Investigations Section
Mobile Police Dept. (WAC)
4851 Museum Dr.
Mobile, Al. 36608
Office Phone
(251) 208-1256
dovej@cityofmobile.org

The City withholds materials related to Dove's fitness as a sworn peace officer with arrest powers. Additionally, Dove signed all his criminal complaints against Issa as "Captain Dove" and his conduct that day involved powers beyond that of mere code enforcement, but that of a peace officer engaged in searches, seizures, and arrests as a police captain. Dove even executed his sworn verification of discovery responses in this case as:


VERIFICATION
JACK DOVE

Dove continues to hold himself out as a City of Mobile Police Captain. Furthermore, in his interrogatory responses Dove noted "I was working as a **Police Inspector** for the Municipal Enforcement Task Force of the **Mobile Police Department**. The duties of the task force are to investigate violations of municipal ordinances, state law, and federal law. In addition to these duties, as a commander in this task force, I served as a coordinator for assigning duties and

supervised three other investigators assigned to the task force." (Dove Rog, 3) In the limited discovery the City has provided to date, there is a memo from David Daugenbaugh Mobile's Director of Municipal Code Enforcement dated November 2, 2023, just days after the Issa incident, to Mayor Stimpson's Chief of Staff James Barber recommending Dove:

> "no longer be assigned to Municipal Enforcement in any capacity, especially with making field inspections for code violations." (emphasis)

Daughenbaugh wrote that Dove's not following the Inoperable Motor Vehicle Ordinance:

> "has created animosity within the Police Liaison Officers as reported to me. When the other officers pointed out that a 30-day notice is required, Jack overrode their decision, taking the position of Police Captain, incorrectly directing the Police Inspectors to use unapproved notice for the vehicles located on private property. Regrettably, this situation with Jack Dove's unprofessional and misguided behavior has created a toxic environment as well as low moral issues within the Police Liaison Inspection Officers Inspector group." (COM-00029-30) (emphasis)

Despite this the City did not discipline Dove for the Issa incident and allowed him to retire with a pension. Dove's continued use of his role as a former Police Captain and peace officer with arrest and search powers in his code enforcement duties makes his prior peace officer history with the City probative and relevant.

## VI. CONCLUSION

The City has not provided sufficient justification to Issa or the Court with specific, demonstrable, and substantial threats that disclosure will impair an important governmental interest. The City has not provided sufficient documentation or information for its assertion of its privileges as required by Rule 45. The City has not established there is any ongoing investigation into Issa or Dove or the events surrounding this incident, nor provided any meaningful explanation why the withheld discovery is shielded from disclosure. Without this, both Issa and the Court cannot meaningfully assess the boilerplate assertions. Perhaps most importantly, this Court cannot perform its independent assessment of the propriety of the privileges, certainly not in the abstract.

The City has not met its burden under Rule 45, and the Court should not uphold its claimed privileges.

The City's own responses and log acknowledge the existence and contents of the withheld materials and, for nine files, expressly place them within the scope of Rule 26(b). At the same time, the City argues that Issa cannot establish a pattern. Its stated grounds for withholding are a state statute that does not govern discovery in this federal action and a qualified privilege that it has neither properly invoked nor substantiated. Issa respectfully requests that the Court grant this motion.

In the final analysis "[I]t is the manner of enforcement which gives §1983 its unique importance, for enforcement is placed in the hands of the people. Each citizen 'acts as a private attorney general who 'takes on the mantel of the sovereign', guarding for all of us the individual liberties enunciated in the Constitution. Section 1983 represents a balancing feature in our governmental structure whereby individual citizens are encouraged to police those who are charged with policing us all. Thus, it is of special import that suits brought under this statute be resolved by a determination of the truth rather than by a determination that the truth shall remain hidden. Frankenhauser v. Rizzo, 59 F.R.D. 339, 343 (E.D. Pa. 1973).

**RELIEF REQUESTED**

Issa respectfully requests that the Court enter an order granting the following relief:

1. Overrule the City's objections based on Ala. Code § 12-21-3.1 and the law enforcement investigative privilege in their entirety;

2. Order the City, within fourteen days, to produce all materials identified in its Log of Materials Withheld, including the 1987 disciplinary file, the 1989 files (I-1989-0012 and I-1989-0057), the Employee Disciplinary History summary, File M2016-0097, File 17IA-0131, the complete contents of the nine internal affairs files designated within Rule 26(b), the subject-incident investigative materials, and the Category 4 investigative narratives;

3. Order the City, within fourteen days, to file a sworn declaration describing the status, location, custodial history, and search efforts concerning File 21IA-0121, while preserving Issa's spoliation rights;

4. Order the City to serve complete written answers to Interrogatory 6, including every subpart, for all complaints against Dove;

5. Order the City to supplement its comparator production with unfounded and no-action investigations, all refusal-to-permit-inspection records (or a verified statement that none exist), and records through Dove's retirement, together with Bates-range identification by request;

6. Order production of Dove's October 24, 2023 daily activity report, any written explanation for BWC non-activation, the Evidence.com audit records for the incident videos, and the corresponding supervisory review records;

7. Alternatively, for any document the Court determines requires individualized treatment, order production of the factual portions with targeted redactions or direct that the disputed document be submitted for in camera review; and

8. Grant any further relief the Court deems just.

Dated: August 19, 2026

Respectfully submitted,

/s/ Matt Green
Matt Green, Esq. (GREEM9500)
Attorney for Plaintiff Abdali Ali Issa

OF COUNSEL:
The Law Office of Matt Green, LLC
*The Pollock-Altmayer House*
501 Government Street, Suite 1
Mobile, AL 36602
T: (251) 434-8500
F: (251) 408-3265
E: matt@mattgreen.lawyer

CERTIFICATE OF SERVICE

I hereby certify that on the 19th day of August, 2026, a copy of the foregoing motion was served upon the parties or counsel for all parties by placing same in the United States mail, properly addressed and postage prepaid, and/or via the Court's electronic filing system as follows:

Kristy L. Waldron, Esq.
BURR & FORMAN LLP
11 N. Water Street, Suite 22200
Mobile, AL 36602

Matthew W. Smith, Esq.
ARMBRECHT JACKSON LLP
P.O. Box 290
Mobile, AL 36601

/s/ Matt Green
Matt Green, Esq.